THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELIZABETH C. JAY v. WILLIAM H. BENNETT and OTHERS, TENANTS, AND HENRY DRALLE and OTHERS, UNDER-TENANTS.

*Lease — forbidding sale of intoxicating liquors — Chap. 583 of 1873 — selling intoxicating liquors withoul a license " is an illegal trade within."*

A lease executed by the plaintiff in 1877, provided among other things, "it being clearly and distinctly understood, however, that at no time shall it be allowed to sell intoxicating liquors on the premises ;" the lessees sub-let a portion of the demised premises, and one of the sub-lessees used his part as a restaurant and sold intoxicating liquors without having received any license. *Held,* that the sale of intoxicating liquors without a license was an illegal trade, as that term is used in chap. 583 of 1873, and that the plaintiff was entitled, in accordance therewith, to recover possession of the whole premises as in case of a tenant holding over after the expiration of his lease.

It is not necessary that in proceedings instituted under said act, the complainant should be the immediate landlord of the tenant carrying on the illegal trade , the original lessor may proceed against his lessee, or any of the sub-lessees

Certiorari to review proceedings before a civil justice, instituted by the relator to recover possession of a demise.

This was a proceeding brought by Miss Jay against certain tenants and sub-tenants, to recover the possession of demised premises by summary proceedings under the Illegal Trade Act.

The affidavit of the landlord sets up the making of a lease for five years, from May 1st, 1877, from her to the defendants, Bennett and Abrahams, at $2,600 per annum, payable quarterly, in which the tenants covenanted that intoxicating liquor should not

be sold upon any part of the premises. The underletting of the premises by the tenants to the other defendants, and among them to one Henry Dralle. The occupation and possession of the said tenants. That the part of the premises so underlet to Henry Dralle was used since May 1st, 1877, for an illegal trade, viz., for the sale of spirituous liquors in quantities less than five gallons at a time, and that Dralle permitted said liquors sold by him to be drank on the premises. That Dralle had no license for the sale of liquors, and that such sale was an illegal trade.

That the tenants, by Dralle, their sub-tenant, were engaged in an illegal trade. That by reason thereof the lease had expired, and that the tenants and sub-tenants hold over after the expiration of their term.

*Lewis L. Delafield*, for relator. The sale of liquor without a license is an illegal trade or business. (Laws 1857, ch. 618, § 13; *Foot* v. *People* [1874], 56 N. Y. R., 321; *Behan* v. *People* [1858], 17 N. Y. R., 517; 7 Abb. Pr. R., 82; *People* v. *Shea*, 3 Park. Cr. R., 562; *People* v. *Stevens*, 13 Wend. R., 341; *People* v. *Brown*, 16 Wend. R., 561; *Blatchley* v. *Moser*, 15 Wend R., 215; *Osgood* v. *People*, 39 N. Y. R., 449; *Hill* v. *People*, 20 N. Y. R., 363.) The term " offense," when used in any statute, shall be construed to mean an act for which any criminal punishment may be inflicted. (3 R. S., 995, § 54 [6th ed.].) It was held in an action for the recovery of damages for injuries sustained to a grocery store by the falling of a wall, that, it appearing in evidence that liquor was sold there without license, there could be no recovery. (*Kane* v. *Johnston*, 9 Bos. R., 154 [Gen. T.]; *Barten* v. *Port Jackson R. R.*, 17 Barb., 403; *Seneca Bank* v. *Lamb*, 26 Barb. R., 595; *Best* v. *Bauder*, 29 How Pr. R., 489; *Hallett* v. *Novion*, 14 John R., 273; 3 R. S., 983, § 102 [6th ed.]; McAdam L. & T., p. 309; Bouvier Tit. Illegal; 2 Parsons on Contracts, 253–265.) The illegal trade being carried on by Dralle, an under-tenant of a part of the premises, invalidates the lease of the tenants as to the whole premises. It is a well settled rule, that if an assignee or under-tenant *of a part of the* demised premises commits any act which, by the terms of the lease, creates a forfeiture of the estate, the forfeiture attaches to the whole of the premises embraced in the

lease. (*Clark* v. *Cummings*, 5 Barb. R., 340, 356; *Jackson* v. *Brownson*, 7 Johns. R., 232; Shep. Touch., 120, 121; 20 Law Library, 233, 275; Preston on Estates, 46; Bacon Abr. tit. Conditions, O. 4; Co. Litt., 202; Wood L. & T., by Harrison, 228.) The possession of Dralle, the under-tenant, is the possession of Bennett, the tenant. (*Carter* v. *Hammett*, 18 Barb. R., 608; Taylor L. & T., § 524.) The under-tenant is chargeable with knowledge of the contents of the original lease. (*Cosser* v. *Collingee*, 3 Myl. & K., 283; *Flight* v. *Barton*, 3 Myl. & K., 282; *Grosvenor* v. *Green*, 28 L. Law Journal, Ch. 173; Taylor L. & T., §§ 110, 109; McAdam, Sum. Pro., 88; *Ormsby* v. *Woodward*, 6 B. & C., 519.) A lessee, on granting an underlease, cannot, therefore, fully protect himself from the consequences of a breach of the original covenants by the under-tenant, without taking a covenant of indemnity from him. (*Perley* v. *Watts*, 7 M. & W., 601; *Walker* v. *Hatton*, 10 M. & W., 249; *Logan* v. *Hall*, 4 C. B., 598; Taylor L. & T., § 110.)

*James R. Adams*, for the tenants.

*William F. Pitshke*, for under-tenants.

Brady, J.:

The relator rented certain premises to the repondents, Bennett and Abrahams, by lease bearing date the 26th day of March, 1877. And the lease among others contained the following clause: "It being clearly and distinctly understood, however, that at no time shall it be allowed to sell intoxicating liquor on the premises." This was the restriction that the relator chose to impose in the exercise of her right of property, and her lessees assented to and are bound by it. The exercise of such a right cannot be questioned, although from the general tenor of the arguments against this proceeding, it would seem questionable whether she had any special rights in her own property derived from the laws of the State relating to it. The lease as stated was executed in 1877, and at that time there existed a statute which was passed in 1873, chap. 583, laws 1873, now known as the illegal trade act, and also a statute known as the civil damage act, passed in the same year, chap. 646, laws 1873.

The lessees cannot escape from the rule of law that they are regarded as contracting with reference to the statutes just mentioned, which establish a remedy of which the landlord could avail himself if he thought proper to do so, and the facts justified its application.

The first or illegal trade act declared by its first section as follows: " Section 1. Whenever the lessee or occupant other than the owner of any building or premises, shall use or occupy the same or any part thereof, for any illegal trade, manufacture or other business, the lease or agreement for the letting or occupancy of such building or premises shall thereupon become void, and the landlord of such lessee or occupant may enter upon the premises so let or occupied, and shall have the same remedies to recover possession thereof as are given by law in the case of a tenant holding over after the expiration of his lease." And by the second section as follows: " The owner or owners of any building or premises knowingly leasing or giving possession of the same, to be used or occupied in whole or in part, for any illegal trade, manufacture or business, or knowingly permitting the same to be used for any illegal trade, manufacture or business, shall be jointly and severally liable with the tenant or tenants, occupant or occupants, for any damage that may result by reason of such illegal use, occupancy, trade, manufacture, or business." This statute was intended not only to prevent the use of premises for an unlawful purpose, but to protect the landlord from the consequences of allowing such unlawful purpose to continue. It gave him in other words the power to put an end to it, and thus to shield himself from any penalty for knowingly permitting the premises to be used as indicated. The relator started with the proposition that intoxicating liquor should not be sold on the premises, and thus in the exercise of her right of property not only inhibited the sale even by a person having a license therefor and thus duly authorized to sell, but secured such a relation to her lessees as would aid her in avoiding the consequences of liquor selling under the provisions of the civil damage act already mentioned.

The covenant between the relator and the lessees was broken when liquor was sold. It extended to all successors of her lessees.

It related to the premises and subjected all occupants to its control, no matter from what source they derived their right of possession under it. The covenant indeed, construed in the light of the existing laws, was that if liquor was sold upon the premises without license, and therefore in violation of the statute of 1857 (Laws of 1857, chap. 628), regulating the sale of intoxicating drinks, the lease should become *ipso facto* void at the option of the relator, and she could employ the same process to enforce that result which she could resort to if the tenants or lessees had held over after the expiration of their lease. (Act of 1873, *supra*.) The right to call into active exercise the summary proceeding instituted herein against a tenant holding over after the expiration of his lease, is familiar and need scarcely be mentioned.

It then seems to be beyond all dispute that if the premises or any part of them was used or occupied for any illegal trade, the relator was *eo instante* invested with the right to declare that the lease was void, and to insist upon her right to possession. The sale of intoxicating liquors without a license, whether as an entire business or as an incident to one, is an illegal trade under the statute of 1857 (*supra*.) The sale is a criminal offense, and punishable as such. It is a misdemeanor, and prohibited as a crime. The proposition seems to be unwarranted, which suggests that it is necessary to declare such a sale in express terms an illegal trade when the act of sale is visited with fine and imprisonment. It would seem to be unnecessary to demonstrate so plain a proposition, and it will not be done. The relator proved the use of a part of the demised premises for the sale of liquors without a license, as an incident of the business carried on by the seller. Having done this, she established the facts required by law to authorize the remedy she sought. The decree or judgment of another tribunal was not at all necessary.

When the statute declared that she should have the same remedies that are given in case a tenant should hold over after the expiration of his term, it conferred on the court conducting the proceeding the same right to ascertain the fact, namely: the sale of liquor without a license as a business, that the court possessed to ascertain the fact that the term had expired. The issue is a very simple one, and could, without endangering the rights of

the citizen, be committed to a court of limited or inferior jurisdiction. This case illustrates this view, because the facts required for the success of this proceeding were established beyond controversy. It is urged also that the relator had waived the forfeiture by commencing proceedings similar to these, based upon the omission of the lessees to pay double the rent reserved, in case liquor was sold upon the premises; but the point is not well taken. The law does not, it is true, favor forfeitures occasioned by violations of covenants or agreements, and the courts have in numerous cases declared that such forfeitures may be waived by the landlord; but the waiver is generally based either upon the receipt of rent subsequent to and with the knowledge of the forfeiture, or some act by which the lease is reaffirmed after the forfeiture and after the knowledge of its occurrence.

In this case the rent was not received. The proceedings to dispossess were dismissed, and the relator declared remediless in that mode. She neither succeeded in getting the rent reserved therefor, nor the possession of the premises. If the rent had been paid, the answer would be a good one, but as suggested it was not paid, and the claim set up for it was discarded as untenable. It would be a marvellous stretch of the rule to hold that an attempt legally made to obtain an additional rent secured by the lease, which was resisted by the lessees and rejected by the court, was a waiver of the alleged forfeiture. The relator did not receive it, and by the decision made was placed precisely where she was when the proceeding was commenced. This case differs totally, therefore, from one in which it appeared that the rent was paid or the lease reaffirmed.

The tenants or lessees and under-tenants assail the relator's rights to this remedy, with other objections, but they are without merit. Indeed they would, if maintained, not only be subversive of the rights of the relator given by the statutes mentioned, but would render those statutes wholly nugatory. It is said for example that the complainant must always be the immediate landlord of him who uses the premises for his unlawful trade, a construction which is not warranted by the language of the statute, and which, if adopted, would enable the lessee by under-letting to deprive the landlord of the benefit of the provisions of the statute, and prevent him from recovering possession of his premises.

It is said, also, that the statute of 1873 only applies where the main business is illegal, and not where it is simply and incidentally a part of the business conducted or carried on. This construction of the statute is not authorized; its language being, whenever the lessee of any building or "premises shall use or occupy any part thereof for any illegal trade or business, the lease shall become void." If the construction thus sought to be put on it is adopted, it would not be difficult by combining some other business with it to avoid the operation of the statute and thus sanction by strategy an unlawful trade or business. It is also said that a leasehold, under a written lease is real estate, and that the legislature has no power to legislate so as to extinguish estates in land except through escheat, or the right of eminent domain. This view is erroneous, because a lease is a chattel real and is not real estate, and the act of 1873 does not extinguish any estate in land by its application, where the lease was executed after its passage.

The estate created was impressed with the provisions of that act when it was passed. These are all the points to which we deem it necessary to give particular consideration.

The views herein expressed cover all the material questions presented upon this appeal, and the result is that the relator should have judgment reversing the judgment of the justice.

Ordered accordingly.

Davis, P. J., and Ingalls, J., concurred.

Judgment ordered for relator as directed in opinion.